## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TAMMY RUFF,                          )
                                     )
                Plaintiff,           )
                                     )   CIVIL ACTION
v.                                   )
                                     )   No. 07-2014-JWL-JTR
                                     )
MICHAEL J. ASTRUE,[1]                )
Commissioner of Social Security,     )
                                     )
                Defendant.           )
_____    )


### REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits and supplemental security income under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A)(hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and JUDGMENT be entered REMANDING the case for further proceedings.

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

## I.   Introduction

Plaintiff's applications for disability insurance benefits and supplemental security income were denied initially, and plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ).[2]  (R. 18, 24, 33, 257-63).  On July 17, 2006 a hearing was held at which plaintiff was represented by an attorney.  (R. 280-99).  At the hearing plaintiff, plaintiff's husband, and a vocational expert testified.  (R. 280-81).  The ALJ issued a decision on Aug. 23, 2006 in which he found that plaintiff is not disabled and denied her applications.  (R. 18-23).

The ALJ found that plaintiff has a severe combination of impairments consisting of fibromyalgia syndrome/chronic fatigue, lower extremity edema, mood swings with mild depression, stable high blood pressure, a GERD[3] problem, and a history of intermittent erythema nodosum.  (R. 18-19).  He found that the severity of the impairments does not meet or equal any listing in the Listing of Impairments.  (R. 19).  He considered several medical opinions; discussing the opinion of Dr. Latinis, a

---

[2]The record reveals that this case was handled as a "Disability Design Prototype," and an ALJ hearing was given without a reconsideration review.  (R. 24, 257-63).

[3]Although the ALJ did not explain the acronym, the court notes that "GERD" often refers to "Gastroesophageal Reflux Disease."  See, http://www.webmd.com/heartburn-gerd/tc/Gastroesophageal-Reflux-Disease-GERD-Topic-Overview. (last viewed Sept. 26, 2007)

rheumatologist who evaluated plaintiff; accepting the <u>diagnoses</u> of Dr. Hailey, plaintiff's treating physician; giving "full weight" to the case analysis of Dr. Trowbridge,[4] a reviewing physician; and apparently rejecting the opinion of Dr. Brewer, an infectious disease specialist who treated plaintiff on two occasions.  (R. 20-21).

The ALJ discussed the credibility of plaintiff's allegations of symptoms and determined them to be "no more than partially credible to not credible."  (R. 20-21, 22).  He assessed plaintiff with the residual functional capacity (RFC) for a range of sedentary work.  (R. 22).  He determined plaintiff is unable to perform her past relevant work, but is able to perform jobs existing in significant numbers in the economy, such as work as a wire wrapper, hand mounter, or optical assembler.  (R. 22). Therefore, he concluded plaintiff is not disabled within the meaning of the Act, and denied her applications.  (R. 23).

Plaintiff sought and was denied Appeals Council review of the ALJ's decision.  (R. 9-11, 13-14).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 9); <u>Threet v. Barnhart</u>, 353 F.3d 1185, 1187 (10th Cir. 2003). Plaintiff now seeks judicial review.

## II.  Legal Standard

---

[4]The decision refers to the physician as "Dr. Throwbridge" (R. 21), but the record reveals she is Dr. Trowbridge.  (R. 190).

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, it is such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d); see also, Barnhart

-4-

v. Walton, 535 U.S. 212, 217-22 (2002)(both impairment and
inability to work must last twelve months).  The claimant's
impairments must be of such severity that she is not only unable
to perform her past relevant work, but cannot, considering her
age, education, and work experience, engage in any other
substantial gainful work existing in the national economy.  Id.;
20 C.F.R. §§ 404.1520, 416.920 (2006).

The Commissioner has established a five-step sequential
process to evaluate whether a claimant is disabled.  20 C.F.R.
§§ 404.1520, 416.920; Allen v. Barnhart, 357 F.3d 1140, 1142
(10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can
be made at any of the steps that a claimant is or is not
disabled, evaluation under a subsequent step is not necessary."
Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines
whether claimant has engaged in substantial gainful activity
since the alleged onset, whether she has severe impairments, and
whether the severity of her impairments meets or equals the
Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).
Id. at 750-51.  If the severity of plaintiff's impairments does
not meet or equal a listed impairment, the Commissioner assesses
claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This
assessment is used at both step four and step five of the
process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five, whether the claimant can perform her past relevant work, and whether she is able to perform other work in the national economy.  <u>Williams</u>, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  <u>Dikeman v. Halter</u>, 245 F.3d 1182, 1184 (10th Cir. 2001); <u>Williams</u>, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within plaintiff's capacity. <u>Id.</u>; <u>Haddock v. Apfel</u>, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in evaluating the credibility of plaintiff's allegations, in not affording controlling weight or deference to the opinions of Dr. Brewer or Dr. Hailey, and in giving excessive weight to the opinion of Dr. Trowbridge.  The Commissioner argues that the ALJ properly evaluated the medical opinions and plaintiff's credibility and stated his reasons for reaching those evaluations, and substantial evidence in the record supports the ALJ's evaluations.  The court will first consider the ALJ's evaluation of the medical opinions.

### III. Evaluation of Medical Opinions

No medical opinion may be ignored and, unless a treating source opinion is given controlling weight, all such opinions will be evaluated by the Commissioner in accordance with certain regulatory factors.  20 C.F.R. §§ 404.1527(d), 416.927(d); <u>Soc.</u>

-6-

Sec. Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv.,
Rulings 123-24 (Supp. 2007).  A treating source is a physician
who has given medical treatment or evaluation and who has an
ongoing treatment relationship with the claimant.  20 C.F.R.
§§ 404.1502, 416.902.  Even a physician who has treated or
evaluated a claimant only a few times or only after a long
interval will be considered a treating source "if the nature and
frequency of the treatment or evaluation is typical for [the
claimant's] condition(s)."  Id.

      In evaluating medical opinions, an ALJ must first determine
whether the treating source(s) opinions are worthy of controlling
weight.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir.
2003).  If not, the treating source(s) opinions are "still
entitled to deference and must be weighed using all of the
factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.
Those factors are: (1) the length of the treatment relationship
and the frequency of examination; (2) the nature and extent of
the treatment relationship, including the treatment provided and
the kind of examination or testing performed; (3) the degree to
which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to
the ALJ's attention which tend to support or contradict the

opinion.  20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); <u>see</u>
<u>also</u> <u>Goatcher v. Dep't of Health & Human Servs.</u>, 52 F.3d 288, 290
(10th Cir. 1995).

> When a treating physician's opinion is inconsistent
> with other medical evidence, the ALJ's task is to
> examine the other physicians' reports "to see if [they]
> 'outweigh[]' the treating physician's report, not the
> other way around." <u>Reyes v. Bowen</u>, 845 F.2d 242, 245
> (10th Cir. 1988).

<u>Goatcher</u>, 52 F.3d at 289-90.  The ALJ must give reasons in the
decision for the weight he gives the treating source opinion.
<u>Watkins</u>, 350 F.3d at 1301.  "Finally, if the ALJ rejects [a
treating source] opinion completely, he must then give 'specific,
legitimate reasons' for doing so."  <u>Id.</u> (citing <u>Miller v. Chater</u>,
99 F.3d 972, 976 (10th Cir. 1996) (quoting <u>Frey v. Bowen</u>, 816
F.2d 508, 513 (10th Cir. 1987)).

SSR 96-8p includes narrative discussion requirements for an
RFC assessment.  West's Soc. Sec. Reporting Serv., Rulings 149
(Supp. 2007).  The discussion is to cite specific medical facts
and non-medical evidence to describe how the evidence supports
each conclusion.  <u>Id.</u>  It must include an explanation how any
ambiguities and material inconsistencies in the evidence were
considered and resolved.  <u>Id.</u>  Where the ALJ's RFC determination
conflicts with a medical source opinion, the ALJ must explain why
he did not adopt the medical source opinion.  <u>Id.</u> at 150.

Plaintiff claims that substantial evidence in the record
does not support the ALJ's stated reasons for discounting Dr.

-8-

Brewer's opinion; that all the physicians agree with regard to plaintiff's impairments, the only disagreement is in the degree of limitations, and in such cases, deference must be accorded to the treating physicians's opinions; and that the ALJ failed to utilize the regulatory factors in evaluating the treating physicians' opinions and failed to state the specific weight given each opinion.  The Commissioner argues that the ALJ properly evaluated the medical opinions and that substantial evidence in the record supports that evaluation.

As noted in the "Introduction" above, the ALJ considered several medical opinions, discussing the opinion of Dr. Latinis, a rheumatologist who evaluated plaintiff; accepting the diagnoses of Dr. Hailey, plaintiff's treating physician; giving "full weight" to the case analysis of Dr. Trowbridge, a reviewing physician; and apparently rejecting the opinion of Dr. Brewer, an infectious disease specialist who treated plaintiff on two occasions.  (R. 20-21).  However, as plaintiff complains, the ALJ based his RFC assessment "principally upon the review and analysis of" Dr. Trowbridge, the reviewing physician.  (R. 21); (Pl. Br. 13).  The ALJ did not perform a proper weighing of the medical opinions as required by law.

The court will not re-weigh the evidence as suggested by the parties' briefs.  Rather, it will cite and illustrate the errors reflected in the ALJ's evaluation of the medical opinions.

First, the ALJ did not discuss whether any physician qualifies as a "treating source" within the meaning of the regulations. Although the record contains Dr. Hailey's treatment notes for plaintiff from Aug. 2003 through Jul. 2006, the ALJ merely acknowledged that the record includes "a report from Dr. Hailey," and stated that he accepted her "diagnoses in this case." (R. 20). He did not state what he found her diagnoses to be, he did not recognize her as a "treating source," he did not summarize her treatment notes, he did not state any opinions he identified in her treatment notes, and he did not state whether he found her opinions worthy of controlling weight.

Whether Dr. Brewer is a "treating source" within the meaning of the regulations is a closer question. However, the ALJ did not state whether he had considered that Dr. Brewer might be a treating source. He noted (twice) that Dr. Brewer only saw plaintiff twice--in Feb. and Sept., 2005--and did not see her between Sept. 2005 and the hearing in Jul. 2006. (R. 20, 21). But he did not explain whether the nature and frequency of the visits is typical for plaintiff's condition and did not make a finding whether Dr. Brewer is a "treating source." Perhaps as a result of this error (and although it is clear the ALJ discounted Dr. Brewer's opinion and would not have given it controlling weight) the ALJ failed to make a specific finding whether Dr. Brewer's opinion might be worthy of controlling weight.

-10-

The ALJ discussed Dr. Latinis's evaluation notes but did not make a finding whether Dr. Latinis is a "treating source," did not identify any specific opinions of Dr. Latinis, and did not explain whether the opinions are worthy of controlling weight. Finally, the ALJ acknowledged that Dr. Trowbridge is a reviewing physician, thus recognizing that she is not a "treating source," and that she is a "nonexamining source" within the meaning of the regulations. (R. 20, 21); see also 20 C.F.R. §§ 404.1502, 416.902 (defining "nonexamining source," "treating source," and "nontreating source").

Second, the ALJ did not explain what less-than-controlling weight he accorded to the "treating source" opinions. Other than accepting Dr. Hailey's "diagnoses," the ALJ did not state of what weight he found her opinions worthy. (R. 20). The ALJ stated findings by Dr. Latinis tending to contradict or detract from Dr. Hailey's diagnosis of fibromyalgia, but he did not specifically identify any opinions of Dr. Latinis, did not assign relative weight to the two doctors' opinions, and did not specify the weight accorded to Dr. Latinis's opinions.

The ALJ clearly discounted Dr. Brewer's opinions and stated reasons for doing so. (R. 20, 21). However, he did not explain whether Dr. Brewer is a treating source. Assuming the ALJ found Dr. Brewer's opinions unworthy of controlling weight, he did not

specify of what lesser weight he found them worthy, and he did not state that he was rejecting the opinions completely.

Third, the court is unable to find substantial evidence in the record supporting the findings the ALJ did make. Plaintiff's arguments notwithstanding, the record does contain substantial evidence from which a reasonable mind might conclude that Dr. Brewer made no clear diagnosis[5] and that the tests performed were all normal.[6] However, as plaintiff suggests, the ALJ erred in finding that the functional limitations assessed by Dr. Brewer are "based entirely upon the claimant's subjective complaints." (R. 21).

"In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002).

---

[5]Although the doctor's RFC questionnaire listed diagnoses of chronic fatigue syndrome and HHV-6 infection, his treatment records are by no means so clear-cut. (R. 238); (R. 251)(Feb. 11, 2005)(discussing possibilities, that he might "simply go with the Immune Care 64," discussing with plaintiff variety of issues "including the HHV-6 connection," and suggesting a bacterial component); (R. 250)(Feb. 21, 2005 letter)(suspect "this may be a chronic fatigue syndrome-type illness," may try treatment used "with chronic fatigue syndrome patients."); (R. 248)(Sept. 6, 2005)(considering Lyme disease). The notes reveal consideration of several potential diagnoses, but no clear diagnosis.

[6]Plaintiff makes much of the fact that her blood count was "abnormal" and her natural killer cell assay was very low. (Pl. Br. 12). The natural killer cell assay although low was in the normal range, and, although the "WBC count is still slightly elevated," "the other inflammatory parameters were normal," suggesting no "major degree of inflammation going on." (R. 249).

Where the ALJ has no evidentiary basis for finding that a treating physician's opinion is based only on plaintiff's subjective complaints, his conclusion to that effect is merely speculation which falls within the prohibition of McGoffin. Langley v. Barnhart, 373 F.3d 1116, 1121 (10th Cir. 2004). Such a conclusion must be based upon evidence taken from the physician's records. Victory v. Barnhart, 121 F. App'x 819, 823-24 (10th Cir. 2005).

Here, the ALJ attempted to support his conclusion that Dr. Brewer's opinion is based entirely on plaintiff's subjective complaints by stating Dr. Brewer's "notes of exam do not support the limitations which he assigned." (R. 21). To the extent the ALJ is stating that Dr. Brewer's exam notes do not state physical limitations such as those expressed in Dr. Brewer's RFC questionnaire, the ALJ provides no legal or medical authority for the expectation that physicians in general should include opinions regarding a patient's physical limitations within their treatment notes, and he provides no basis in the facts of this case for expecting that such specific limitations should be included in Dr. Brewer's notes.

To the extent the ALJ is stating that Dr. Brewer's exam notes do not reflect medical findings consisting of symptoms, signs, and laboratory findings which could support the limitations opined by Dr. Brewer, such a conclusory statement is

inadequate.  The ALJ does not point to any specific information contained in Dr. Brewer's treatment notes which might indicate the physician based his opinion entirely on subjective complaints.  If the ALJ is to find that the physical limitations opined by Dr. Brewer are based entirely upon plaintiff's subjective complaints, he must point to an evidentiary basis in the record which supports his finding.

Moreover, while the ALJ stated that he accepted Dr. Hailey's diagnoses, he noted that Dr. Hailey diagnosed plaintiff with fibromyalgia, and stated findings by Dr. Latinis tending to contradict or detract from such a diagnosis.  (R. 21)  Further, the ALJ found that plaintiff has "fibromyalgia syndrome/chronic fatigue," not "fibromyalgia."  (R. 18).  The ALJ placed each of these potentially contradictory statements into his decision, but did not explain how he had considered and resolved the inconsistencies and ambiguities.

The court cannot find substantial evidence in the record supporting the ALJ's determination to give "full weight" to Dr. Trowbridge's case analysis.  Dr. Trowbridge is a nonexamining source, but the ALJ did not specifically examine her report to see if it outweighed the opinions of the treating sources.  Moreover, Dr. Trowbridge's case analysis is, at best, tentative.  The physician stated, "With continued evaluation, medical management and treatment <u>it is possible</u> that this claimant <u>could</u>

gain more control over her symptoms and maintain a low stress, sedentary job." (R. 190)(emphasis added). The case analysis suggests that at the time it was written plaintiff did not have adequate control over her symptoms of chronic severe fatigue, joint pain, and insomnia and was unable to maintain a low stress, sedentary job, but that she might gain adequate control with further medical management and treatment. The ALJ asserted he gave "full weight" to Dr. Trowbridge's case analysis, but made no attempt to explain how he determined the evidence establishes that plaintiff had subsequently gained adequate control over her symptoms and is now able to perform low stress, sedentary work.

Remand is necessary for the Commissioner to properly weigh the medical opinions in accordance with the correct legal standards as discussed above, to determine whether the treating physicians' opinions are worthy of controlling weight and, if not, to explain how he considered and resolved all ambiguities and material inconsistencies in the evidence and to explain the weight accorded to each medical opinion.

The court, however, rejects plaintiff's argument that the opinions of the treating physicians must be accepted because all the doctors agree plaintiff has severe impairments and disagree merely as to the degree of limitation caused by the impairments. (Pl. Br. 13-14)(citing SSR 96-2p; and Reyes v. Bowen, 845 F.2d at

245).[7]  SSR 96-2p explains the procedure for giving controlling weight to a treating source medical opinion, but the court is unable to find any suggestion in that ruling that a treating source opinion must be accepted or given controlling weight in a case in which the physicians agree as to the diagnoses and disagree merely as to the degree of physical limitation resulting from the impairment(s).  Rather, SSR 96-2p is consistent with the court's statement of the legal standard and the court's analysis discussed herein.

In Reyes, the court noted that the physicians had identical diagnoses and differed only regarding the limitations imposed by the impairments.  Reyes, 845 F.2d at 245.  However, the Reyes court determined remand was necessary because the reason given by the Appeals Council for discounting the treating physician's opinion and accepting the examining physician's opinion "hardly provides the justification legally required for rejecting the treating physician's opinion and accepting instead the examining physician's opinion."  Id.  As the Reyes court recognized, accepting one physician's opinion over another depends on a proper application of the legal standard discussed above, not merely a consideration of the differences in the degree of limitation opined.

---

[7]Plaintiff cites to Reyes v. Barnhart, but as noted above, the case appearing at the location cited is Reyes v. Bowen.

## IV.  Credibility

Plaintiff claims that the ALJ failed to provide any clear basis for his finding that plaintiff's allegations of symptoms are "no more than partially credible to not credible."  Pl. Br. 16)(quoting (R. 22)).  She explains her view of the evidence and then concludes, "The record clearly demonstrates that Ms. Ruff's credibility is not in question." (Pl. Br. 18).  The Commissioner explains his view of the evidence and argues that the ALJ articulated inconsistencies upon which he relied in determining plaintiff's allegations are not credible, that those inconsistencies are supported by the record evidence, and therefore, the credibility finding should be affirmed.

The court is charged with reviewing the final decision of the Commissioner, which in this case is the ALJ's decision. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004)(decision should be evaluated based solely on the reasons stated in the decision).  Thus, plaintiff's view of the evidence or the Commissioner's post-hoc view of the evidence is irrelevant to the court's determination.  E.g., Grogan v. Barnhart, 399 F.3d 1257, 1263 (10th Cir. 2005)(reviewing court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the decision); Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989)("[T]he possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's findings from being supported by substantial evidence.")(quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)); Knipe v. Heckler, 755 F.2d 141, 149 n.16 (10th Cir. 1985)(decision cannot be affirmed on the basis of appellate counsel's post hoc rationalizations for agency action).

An ALJ's credibility determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990).  "Credibility determinations are peculiarly the province of the finder of fact."  Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  Therefore, in reviewing the ALJ's credibility determinations, the court will usually "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility."  Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

The ALJ noted that claimant has a "good work history," that her "testimony is generally consistent with the information provided by medical sources[,] . . . her statements at the hearing were consistent with each other," and her husband's testimony is somewhat consistent.  (R. 22).  He found the

allegations of plaintiff and her husband however, at most
partially credible because:  (1) Statements made to doctors are
not consistent with statements made at the hearing; (2) plaintiff
exaggerated symptoms at the hearing; (3) both plaintiff and her
husband tend to exaggerate; (4)  at the hearing plaintiff alleged
numerous side effects from medications but the medical records do
not contain such complaints; and (5) plaintiff's only treatment
for depression is from her family doctor.  (R. 20-21).

    The court finds two errors in the ALJ's credibility analysis
which require remand for proper evaluation.  First, the ALJ
failed to closely and affirmatively linked his credibility
findings to substantial evidence in the record.  He provided no
citations to statements made to doctors which were inconsistent
with statements made at the hearing.  He provided no citations to
symptoms or other testimony by plaintiff or her husband which
were exaggerated at the hearing.  He provided no citation to
medication side effects which were alleged at the hearing but
were not contained in the medical records.  Further, the ALJ did
not even provide examples of the alleged inconsistencies so that
the court could search the record and determine whether the
alleged inconsistencies are supported by substantial evidence.

    Second, the ALJ gave no explanation how plaintiff's "good
work history," her testimony consistent with the information
provided by medical sources, her internally consistent statements

at the hearing, and her husband's consistent testimony were weighed against the reasons for finding the testimony not credible, and how the determination was made that the allegations were not credible.  As discussed above, an RFC assessment must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. The ALJ noted factors which in his opinion supported the credibility of the testimony and factors which in his opinion detracted from the credibility of the allegations, and concluded that the allegations were not credible.  But he failed to explain how he resolved the ambiguities and inconsistencies and reached his conclusion.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and JUDGMENT be entered REMANDING the case in accordance with the fourth sentence of 42 U.S.C. § 405(g) for further proceedings as discussed above.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 3rd day of October 2007, at Wichita, Kansas.


                              s/John Thomas Reid
                              **JOHN THOMAS REID**
                              **United States Magistrate Judge**